UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY, No. 14-13729 ta7

    Debtor.

LOS ALAMOS NATIONAL BANK,

    Plaintiff,

v. Adv. No. 15-1029

BRYAN A. LAMEY and
ANN LAMEY,

    Defendants.

## SUPPLEMENTAL OPINION ON DEFENDANT BRYAN LAMEY'S GUARANTY LIABILITY TO LOS ALAMOS NATIONAL BANK

As part of trial on the merits of this adversary proceedings, Los Alamos National Bank ("LANB") sought to establish defendant Bryan Lamey's liability under a guaranty he signed, as well as the amount of the liability. On July 21, 2017, the Court denied Defendant's discharge but did not rule on his guaranty liability. At a post-trial status conference, LANB and the Trustee asked the Court to rule, as it is the most efficient forum. Defendant Bryan A. Lamey consented object. In the interest of efficiency, therefore, the Court issues this opinion.

    I.    FACTS

Defendant formed six limited liability companies in 2012 (the "United Entities") for the purpose of owning and operating recreational vehicle dealerships in Las Cruces and Albuquerque,

New Mexico.[1] The other owners were Robert Maese, Sr. and Robert Maese, Jr. Defendant owned 51% of the holding companies and was the managing member of all the United Entities.

Note 1. On or about August 30, 2012, three of the United Entities (together, the "Borrowers")[2] borrowed $1,650,000 from Plaintiff to buy real estate in Las Cruces for the Las Cruces dealership. The loan, evidenced by a promissory note ("Note 1") and a Commercial Loan Agreement (the "Loan Agreement"), was secured by, inter alia, a mortgage on the purchased land (the "Mortgage"). The Loan Agreement provides in part:

> 8. DEFAULT. I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following occur:
>    A. Payments. I fail to make a payment in full when due.
> …
> 9. REMEDIES. After I default, you may at your option do any one or more of the following:
>    A. Acceleration. You may make all or any part of the amount owing by the terms of the Loan immediately due.
>    B. Sources. You may use any and all remedies you have under state or federal law or in any loan document.
> …
> 10. COLLECTION EXPENSES AND ATTORNEYS FEES. On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. The expenses are due and payable immediately.

Note 1 went into payment default on July 1, 2014, whereupon LANB declared all amounts due and owing. Note 1's default interest rate is 16%.

---

[1] The United Entities consist of two holding companies (United Real Estate Holdings LLC and United RV Holdings LLC); two real estate companies (United Real Estate Las Cruces LLC and United Real Estate Albuquerque LLC); and two operating companies (United RV Las Cruces LLC and United RV Albuquerque LLC). The real estate holding company owned the real estate companies, and the operating holding company owned the operating companies.

[2] The two holding companies and the Las Cruces real estate company.

Credit Card Debt. On August 30, 2012, United Real Estate Holdings, LLC submitted a Business Loan Application to LANB for company credit cards. The credit card limit was $30,000. No additional documentation is in evidence (such as, for example, the Business Bankcard Agreement referred to in the application, or any guaranties). The Borrowers' credit card account currently has a principal balance of $21,827.34, with a total balance as of June 6, 2017, of $30,555.79.

The Guaranty. On August 30, 2012, Defendant signed a Guaranty (Continuing Debt – Unlimited (the "Guaranty"), drafted by LANB, which provides in part:

> 2. **SPECIFIC AND FUTURE DEBT GUARANTY**. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described debts including without limitation all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.
>
> A promissory note or other agreement, No. 0143703860, dated August 30, 2012, from United Real Estate Holdings, LLC, United RV Holdings, LLC and United Real Estate Las Cruces, LLC (Borrower) to you, in the amount of $1,650,000.
>
> In addition, Debt refers to debts, liabilities, and obligations of the Borrower… whether existing or created or incurred in the future, due or to become due, absolute or contingent . . . .
>
> *You may not apply this Guaranty to any other Debt, other than the debt related to the Note as defined above which includes any and all renewals, extensions, modifications and substitutions of said Note, without my prior consent.* (italics added)
>
> 4. **UNCONDITIONAL LIABILITY**. I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on

this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if another person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

11. **COLLECTION, EXPENSES AND ATTORNEY FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your right and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal fees…. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

Note 2. On March 12, 2013, LANB extended to the Borrowers a $100,000 line of credit, evidenced by a Credit Agreement ("Note 2"). Note 2 matured on March 12, 2014, was not paid, and went into default. Note 2 has since been paid in full as part of a settlement reached between LANB and the Maeses (see below).

State Court Collection Action. On August 24, 2014, LANB filed a state court complaint against the Borrowers, seeking a money judgment on Note 1 and Note 2 and to foreclose the Mortgage.[3] Borrowers answered the complaint and asserted a number of lender liability counterclaims.

On October 17, 2016, the state court entered partial summary judgment, giving LANB a $2,185,161.80 money judgment against the Borrowers on Note 1, and foreclosing the Mortgage.

---

[3] Defendant filed his bankruptcy petition on December 30, 2014.

-4-

The daily interest accrual on the judgment amount was $711.61. The judgment recited that Note 2 had been paid in full through a settlement with the Maeses.

On November 1, 2016, the state court awarded LANB a $65,639.75 supplemental money judgment against the Borrowers, for attorney fees incurred in the state court action.

On November 30, 2016, the state court entered an Order Approving Special Master's Sale and Report, and Awarding Deficiency Judgment. LANB was awarded a deficiency judgment against the Borrowers of $448,919.42,[4] plus interest at 16% per annum ($196.70 per day).[5]

<u>Trial of this Adversary Proceeding</u>. The Court held a trial on the merits of this adversary proceeding on June 6 and 7, 2017. It entered its opinion and judgment on July 21, 2017, denying Defendant's discharge under §§ 727(a)(2) and (a)(4).

In the bankruptcy case and adversary proceeding, LANB incurred attorney fees of $35,994.86 through April 30, 2017, and additional fees of $23,025.39 from May 1-June 13, 2017.[6]

LANB asks for a ruling that Defendant owes the following amounts under the Guaranty as of June 13, 2017:

| | |
|---|---|
| Deficiency Judgment | $ 448,919.42 |
| Accrued interest (November 30, 2016-June 13, 2017) | $ 38,374.05 |
| Attorney fees awarded in state court: | $ 65,639.75 |
| Bankruptcy attorney fees through April 30, 2017 | $ 35,994.86 |
| Bankruptcy attorney fees from May 1, 2017-June 13, 2017 | $ 23,025.39 |
| Credit card debt | $ 30,555.79 |
| Total | <u>$ 642,509.26</u> |

---

[4] There is nothing in the record showing how much the Mortgages property sold for, but the price appears to have been about $1,735,000.

[5] Paragraph 6 of the order states: "The Court reserves ruling on United Real Estate Holdings, LLC, United Real Estate Las Cruces, LLC and United RV Holdings, LLC's ultimate liability for the deficiency." This language was added, presumably, because the lender liability counterclaims are still pending.

[6] After trial, LANB supplemented its attorneys' fees for the period from May 1, 2017 to June 13, 2017.

At trial, the Defendant did not dispute any of the foregoing amounts, or object to the admission of the exhibits or testimony supporting the amounts.

## II. DISCUSSION

### A. Defendant's Guaranty Liability is not Contingent.

At trial, Defendant's sole defense was that the Borrowers' obligations under Note 1 are subject to undetermined counterclaims, and therefore are contingent. Because of the contingency, Defendant argues, it is too early to determine his liability under to the Guaranty.

Contrary to Defendant's argument, his Guaranty liability is not contingent on the outcome of the Borrowers' counterclaims. Note 1 went into default in July 2014, and LANB "accelerated" all amounts due. Upon default and acceleration, Defendant became non-contingently liable for the entire note balance. *See WXI/Z Southwest Malls v. Mueller*, 137 N.M. 343, 347 (Ct. App. 2005) (under an absolute guaranty, guarantor is considered automatically liable upon default of the principal, and creditor is neither required to first seek payment from principal nor notify guarantor of default); *In re Krupka*, 317 B.R. 432, 436 (Bankr. D. Colo. 2004) (debt is "noncontingent when all of the events giving rise to liability for the debt occurred…" and "liquidated… if the amount of the debt is capable of being readily ascertained"). *See also Glaubitz v. Grossman*, 2011 WL 147931, at *1 (E.D. Wisc.) (guaranty obligation is contingent upon performance by the primary obligor, and becomes non-contingent upon the primary obligor's default). Thus, on the petition date (months after Borrowers defaulted under Note 1), Defendant was non-contingently liable to LANB under the Guaranty for all amounts due thereunder.

Further, the Guaranty has extensive waiver language that waives any defenses based on Borrowers' counterclaims.[7] Unambiguous waivers in guaranty agreements generally are enforceable under New Mexico law. *See, e.g., Sunwest Bank of Clovis v. Garrett*, 113 N.M. 112, 117 (S. Ct. 1992) ("[R]ights of the guarantor and the creditor are determined by reference to terms of the contract between them… the guarantor may waive legal defenses to his or her liability in advance under the terms of the guaranty"); *Levenson v. Haynes*, 123 N.M. 106, 112 (Ct. App. 1997) ("parties to a surety-ship arrangement are free to determine for themselves by contract the effect of surety-ship status and the duties and obligations which follow. Restatement (Third) of Suretyship and Guaranty § 6"). *See also First Texas Service Corp. v. Roulier*, 750 F. Supp. 1056, 1061 (D. Colo. 1990) (collecting cases enforcing waiver of defenses).

Among the enforceable waivers are those that relate to defenses of the principal obligor. *See* Restatement (Third) of Suretyship & Guaranty § 34, cmt. a (1996) ("[T]he secondary obligor is free to contract to be liable on the secondary obligation even when the principal obligor has a defense to the underlying obligation"). Thus, if the Borrowers' liability is reduced through of one their counterclaims, LANB might not be able to collect some or all of the deficiency judgment from the Borrowers, but could still collect from Defendant.

Finally, the Trustee has settled all of Defendant's counterclaims against LANB, so Defendant could not reduce his liability by the amount of such claims, even if they had not been waived.

---

[7] Paragraph 4 of the Guaranty states in part: "My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower.

-7-

For all of these reasons, the Court concludes that Defendant's Guaranty liability is not contingent.

    B.    <u>Amount of Defendant's Guaranty Liability</u>.

    1.    <u>Included Liabilities</u>.  The evidence at trial established that Defendant is liable under the Guaranty for the following amounts:

    a.    <u>Deficiency Judgment</u>.  Following the foreclosure sale, the deficiency judgment against Borrowers, based on their liability under Note 1, was established as $448,919.42.  Defendant is liable under for this amount.

    b.    <u>Interest on Deficiency Judgment</u>.  The Borrowers defaulted on July 1, 2014.  Thereafter, LANB had the right to collect interest at the 16% default rate, as specified in the relevant loan documents and Guaranty.

Post-petition interest continues to accrue on nondischargeable debt, although it generally is not part of an allowed claim for purposes of receiving bankruptcy estate dividends.  *In re Jordan*, 555 B.R. 636, 644 (Bankr. S.D. Ohio 2016).  *See generally Bruning v. United States,* 376 U.S. 358, 362-63 (1964) (holders of nondischargeable debt may recover post-petition interest from debtors personally); *Payne v. Brace (In re Brace),* 131 B.R. 612, 613-14 (Bankr. W.D. Mich. 1991) (post-petition interest may accrue on nondischargeable fraudulent misrepresentation debt); *Members Credit Union v. Kellar (In re Kellar),* 125 B.R. 716, 720-21 (Bankr. N.D.N.Y. 1989) (same); *Allen v. Romero (In re Romero)*, 535 F.2d 618, 623 (10th Cir. 1976) (same).

The deficiency judgment accrues interest at 16% per year, or $196.79 a day, starting November 30, 2016.  From November 30, 2016 through June 13, 2017 (195 days), the interest accrual equals $38,374.05.

c.  <u>Attorney Fees</u>.  LANB has the right under the relevant loan documents and the Guaranty to recover attorney fees incurred because of "collection, enforcement or protection of [LANB's] rights and remedies under this Agreement or any other Loan Document."

The state court awarded LANB $65,639.76 in attorney fees.  This amount appears to be in addition to the deficiency judgment.  Under the Guaranty, Defendant is liable for attorney fees incurred in connection with collection or enforcement actions of Note 1.  *See, e.g.*, *SilverDeer St. John Equity Partners I LLC v. Kopelman*, 2012 WL 4422811, *5 (E.D.N.C. 2012) (under North Carolina law, guarantor liable for fees incurred in collection against borrowers).  Since the Defendant did not object or argue otherwise, the Court concludes it should enforce the Guaranty as drafted.  Defendant therefore is liable for the state court attorney fees.

Additionally, LANB seeks $35,994.86 in attorney fees incurred in the bankruptcy case and adversary proceeding through April 30, 2017, and an additional $23,025.39 through June 14, 2017.  Defendant did not object to the reasonableness of the fees.  The Court has reviewed the billing statements and finds that all charged fees are reasonable.  The Defendant is liable for the fees under the Guaranty.

2.  <u>Excluded Liabilities</u>.

a.  <u>Credit Card Debt</u>.  It is not clear that the Guaranty applies to the credit card debt.  Most of the language in paragraph 2 of the Guaranty is broad, and would encompass the credit card debt.  The last sentence of the paragraph (italicized by the Court), however, contradicts the rest of paragraph and limits the Guaranty to Note 1 "without [Defendant's] prior written consent."  This sentence appears to have been drafted specifically for the Guaranty.

Guaranties are narrowly construed. *WXI/Z Southwest Malls v. Mueller*, 137 N.M. at 347 (guarantor generally is entitled to strict construction of the guarantee, and cannot be held liable beyond its strict terms or intent); *State v. Ericksons*, 106 N.M. 567, 568 (S. Ct. 1987) (terms of a bail contract are to be construed strictly in favor of the surety). Guaranties are construed against the drafter. *Williston on Contracts* § 32:16 (4th ed.), n. 11 and accompanying text. *See also Heye v. American Golf Corp., Inc.,* 134 N.M. 558, 562-3 (Ct. App. 2003) ("we construe ambiguities in a contract against the drafter to protect the rights of the party who did not draft it"). Specific language in a contract controls over general language. *See Williston on Contracts* § 32:10 (4th ed.), n. 1 and accompanying text ("When general and specific clauses conflict, the specific clause governs the meaning of the contract"). Finally, it is said that guarantors are the favorite of the law. *Levenson v. Haynes*, 123 N.M. at 112, citing *Shirley v. Venaglia*, 86 N.M. 721, 724 (S. Ct. 1974); *WXI/Z Southwest Malls v. Mueller*, 137 N.M. at 347. Based on the foregoing case law and the language of paragraph 2 of the Guaranty, the Court finds and concludes that the Guaranty does not guarantee payment of the credit card debt.[8]

        b.    <u>Note 2</u>. Note 2 has been paid in full, so Defendant has no liability for any amounts previously due. If Note 2 not been paid, furthermore, it might not have been covered by the Guaranty, for the same reasons the credit card debt is not covered.

### III.    CONCLUSION

LANB established Defendant's liability under the Guaranty, as of June 13, 2017, as follows:

---

[8] There is mention of guarantors in the credit card Business Loan Application. That language is not enough to guaranty the credit card debt or give the prior written consent required by paragraph 2 of the Guaranty.

-10-

| | |
|---|---|
| Deficiency Judgment: | $ 448,919.42 |
| Default Interest from November 30, 2016 through June 13, 2017: | $ 38,374.05 |
| Attorney fees awarded in state court: | $ 65,639.75 |
| Bankruptcy attorney fees through April 30, 2017 | $ 35,994.86 |
| Bankruptcy attorney fees from May 1, 2017-June 13, 2017 | $ 23,025.39 |
| Total | $ 611,953.47 |

Interest accrues on the deficiency judgment amount at 16% per annum, or $196.70 per day. Defendant is not liable under the Guaranty for the credit card debt. The Court overrules Defendant's objection that his guaranty liability is contingent. This opinion does not establish LANB's allowed claim for the purposes of distribution from the estate. A separate judgment will be entered.

/s/ David T. Thuma

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 31, 2017

Copies to: counsel of record